# IN THE UNITED STATES DISTRICT COURT
# IN AND FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BRIAN LEE WOOD,<br><br>                Plaintiff,<br><br>v.<br><br>DOUG COOK et al.,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:15-CV-71<br><br>Judge Robert J. Shelby |

Plaintiff, inmate Brian Wood, asserts that Physician Assistant Raymond Merrill and Dr. Kennon Tubbs (Medical Defendants) violated his right against cruel and unusual punishment under the Federal Constitution. Specifically, he asserts Medical Defendants provided inadequate medical treatment by failing to properly treat his back pain and Hepatitis C. Based on qualified immunity, Medical Defendants seek summary judgment on causes of action against them. They assert that Plaintiff did not suffer a constitutional violation (the first prong of the qualified-immunity inquiry). (Doc. No. 45.) Plaintiff opposes the motion. (Doc. Nos. 35, 58 & 69.)

Plaintiff's Complaint, (Doc. No. 5), and complaint addendum (as construed by the Court), (Doc. No. 9), has these evidentiary attachments regarding his medical treatment: (1) grievance copies; (2) medical records; and (3) disciplinary reports. On this Court's order, Medical Defendants filed a *Martinez* report, (Doc. No. 30), including this evidentiary documentation: (1) medical records; (2) grievance records; (3) disciplinary records; and (4) Defendants' declarations. These documents subsume those that Plaintiff filed with his

Complaint. Plaintiff filed no further evidentiary support for his claims with his responses to the summary-judgment motion.

The Court rules for Medical Defendants.

**UNDISPUTED MATERIAL FACTS**

• In early 2014, Utah State Prison (USP) medical staff, including Medical Defendants, assessed Plaintiff's back symptoms, with the help of x-rays, and concluded Plaintiff suffered mild-to-moderate degenerative disc disease and osteoarthritis. (Compl., Doc. No. 5, at 4-5; Merrill Decl., Doc. No. 30-1, at ¶¶ 5-8, 11; M-Track notes, sealed Ex. 1 to *Martinez* report, at 9-10.)

• Defendant Tubbs ordered an MRI that was done on April 30. (Compl., Doc. No. 5, at 5; sealed Ex. to Compl., Doc. No. 6, at 2-3; Merrill Decl., Doc. No. 30-1, at ¶ 11; Tubbs Decl., Doc. No. 30-2, at ¶ 8; M-Track notes, sealed Ex. 1 to *Martinez* report, at 8.)

• Plaintiff refused a consultation with a neurosurgeon to discuss other treatment options. (M-Track notes, sealed Ex. 1 to *Martinez* report, at 8.)

•Medical Defendants prescribed Neurontin for his pain. (Merrill Decl., Doc. No. 30-1, at ¶ 9; Tubbs Decl., Doc. No. 30-2, at ¶ 10; M-Track notes, sealed Ex. 1 to *Martinez* report, at 1-2, 7, 9.)

• Neurontin is an addictive drug with high potential for abuse and a high street value and is commonly abused for recreational purposes among prison populations. (Merrill Decl., Doc. No. 30-1, at ¶ 9; Tubbs Decl., Doc. No. 30-2, at ¶ 12.)

• Another MRI was done on June 11, 2014. (Compl., Doc. No. 5, at 5; sealed Ex. to Compl., Doc. No. 6, at 2-3.)

• In October 2014, USP officials found Plaintiff guilty of abusing the Neurontin. (Sealed Ex. to Compl., Doc. No. 6, at 9; Merrill Decl., Doc. No. 30-1, at ¶ 13.) A search of his cell revealed 600 mg. pills, when he had been prescribed 400 mg. pills. (Compl., Doc. No. 5, at 6; Merrill Decl., Doc. No. 30-1, at ¶ 14; M-Track notes, sealed Ex. 1 to *Martinez* report, at 7.) Plaintiff states that he "bought someone else's [so he could] take one at night." (Merrill Decl., Doc. No. 30-1, at ¶ 14; compl. addendum, Doc. No. 9, at 1.) As a consequence, medical staff, including Medical Defendants, discontinued his Neurontin prescription for six months. (Comp. addendum, Doc. No. 9, at 1; Merrill Decl. Doc. No. 30-1, at ¶¶ 14; M-Track notes, sealed Ex. 1 to *Martinez* report, at 7.)

• While Neurontin was suspended, Plaintiff kept asking for Neurontin, but Medical Defendants offered Plaintiff other, less addictive, pain medications--i.e., Elavil, aspirin, ibuprofen, naproxen sodium, and Tylenol. (Compl., Doc. No. 5, at 15; Merrill Decl., Doc. No. 30-1, at ¶¶ 15-19; Tubbs Decl., Doc. No. 30-2, at ¶¶ 13-14; M-Track notes, sealed Ex. 1 to *Martinez* report, at 6-7.) Plaintiff refused alternative medications. (Merrill Decl., Doc. No. 30-1, at ¶ 16; Tubbs Decl., Doc. No. 30-2, at ¶ 14; M-Track notes, sealed Ex. 1 to *Martinez* report, at 6.)

• While he was off Neurontin, Plaintiff was not at risk of serious medical harm, nor did his condition worsen. (Tubbs Decl., Doc. No. 30-2, at ¶ 15.)

• Plaintiff's Neurontin prescription was renewed in May 2015. (Merrill Decl. Doc. No. 30-1, at ¶ 20; M-Track notes, sealed Ex. 1 to *Martinez* report, at 5.)

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Factual assertions may be supported by,

> citing to parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id*. at 56(c)(1). The summary judgment rule allows the court to "isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).

Generally, the party moving for summary judgment bears the burden of showing "that there is an absence of evidence to support the non-moving party's case." *Id*. at 325. But, when defendants assert qualified immunity in summary-judgment motions, the burden of proof shifts to the plaintiff. Plaintiff then has the burden to show that: "(1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Becker v. Bateman*,

709 F.3d 1019, 1022 (10th Cir. 2013) (internal citations omitted). Here, Plaintiff has failed to meet his burden to rebut qualified immunity.

## CLAIMS

### I. Hepatitis C

Nowhere in the arguments or evidence for and against summary judgment on Plaintiff's Hepatitis C claim is there mention of or link to Medical Defendants. Relevant medical records show that a different provider saw Plaintiff to order a test for Hepatitis C and discuss treatment options. (M Track notes of patient encounter on Aug. 22, 2012 with P.A. Abbott, sealed Ex. 1 to *Martinez* report.) The Court thus dismisses the Hepatitis C claim without further discussion.

### II. Back Pain

The Court addresses the first prong of the qualified immunity analysis: Based on the undisputed material facts, did Medical Defendants violate Plaintiff's constitutional right to be free from cruel and unusual punishment--i.e., inadequate medical treatment?

#### A. Deliberate Indifference Legal Standard

Deliberate indifference to a prisoner's serious medical needs "'constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "'Deliberate indifference' involves both an objective and a subjective component." *Id.* The objective component is met if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotation marks omitted). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

*Hunt v. Uphoff,* 199 F.3d 1220, 1224 (10th Cir. 1999). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. "In measuring a prison official's state of mind, 'the official must be both aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference.'" *Martinez*, 430 F.3d at 1304 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Disagreement with medical judgment does not constitute deliberate indifference. *Green v. Branson*, 108 F.3d 1296, 1303 (10th Cir. 1997). Further, negligence allegations are insufficient to state a claim. *Estelle*, 429 U.S. at 105. And "[d]elay in [providing] medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir 2000). The "substantial harm requirement may be met by showing "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 949, 950 (10th Cir. 2001).

### B. Precedent on Medication Abuse

The Tenth Circuit has held that stopping prescription pain medication after allegations that an inmate abused his medication does not violate the Eighth Amendment. In *Todd v. Bigelow*, 497 F. App'x 839 (2012), an inmate was prescribed Neurontin due to degenerative back pain. *Id.* at 840. Prison officials stopped Neurontin after he was caught "cheeking" (pretending to swallow) it. *Id.* at 841. The inmate unsuccessfully sought reinstatement of Neurontin. *Id.* He also initially declined other pain relievers, before eventually accepting medicine less prone to abuse. *Id.* The inmate sued prison officials saying he did not mean to abuse or divert his medication and denial of his Neurontin violated the Eighth Amendment. *Id.* The Tenth Circuit, however, noted

5

that even if the medical staff incorrectly concluded the inmate meant to abuse his medication, the withholding of his Neurontin prescription was not deliberate indifference. "Instead, it reflects a legitimate penological interest in prevention of drug abuse." *Id.* Further, the court noted that the inmate's preference for Neurontin over other medicine did not give rise to an Eighth Amendment claim. *Id.* at 842. "[A] difference of opinion with the medical staff as to the optimal pain-management regimen does not amount to deliberate indifference." *Id.; see also Wishneski v. Andrade*, 572 F. App'x 563, 569 (10th Cir. 2014) (stating inmate may not prevail on challenge to medical judgment in substituting other medicine for narcotic painkiller); *Johnson v. Richins*, 438 F. App'x 647, 648-49 (10th Cir. 2011) (deciding prison officials not deliberately indifferent when suspended Neurontin for *suspicion* of inmate cheeking pills); *Pumphrey v. Wood*, No. 1:12-CV-115-TS, 2015 U.S. Dist. LEXIS 38754, at *5-20 (D. Utah March 25, 2015) (unpublished) (holding inmate's medical condition not sufficiently serious to state Eighth Amendment claim for failure to prescribe Neurontin when medication would not stop advancement of underlying medical condition).

Also, in *Wishneski,* a prison doctor stopped an inmate's narcotic pain reliever after prison officials found he was hoarding his medication and brought disciplinary proceedings against him. 572 Fed. App'x at 565. The disciplinary proceedings were later dismissed due to absence of chain-of-custody documentation for the medication found in the inmate's cell. *Id.* at 566. The inmate then sued both the doctor and hearing officer, asserting the hearing officer pressured the doctor to stop the medication because the disciplinary action was dismissed on a technicality rather than factual innocence. *Id.* at 565. The Tenth Circuit rejected the inmate's appeal specifying that stopping the inmate's "prescription was a *medical* decision" by the doctor and

noting there was no "evidence of any prison policy, disciplinary directive, or pressure from [the hearing officer] constraining [the physician's] exercise of professional judgment in that regard." *Id*. at 566-67 (emphasis in original).

### C. Applying Law to Facts

Against the backdrop of these principles and precedents, Plaintiff's claims fail on both the objective and subjective prongs of the Eighth Amendment deliberate-indifference analysis. First, undisputed material facts clarify that Plaintiff was given Neurontin to address back pain. The withholding of Neurontin did not cause Plaintiff's condition to deteriorate further. Neurontin offered only comfort from pain. Discontinuation of Plaintiff's prescription pain medication did not subject him to deprivation of sufficient severity to trigger the Eighth Amendment.

Second, Plaintiff cannot show that Medical Defendants were deliberately indifferent to a serious risk of substantial harm. Neurontin has potential for abuse and diversion within USP. Prison officials have a legitimate penological interest in preventing abuse of these drugs through hoarding or diversion. Further, Plaintiff's pain apparently did not reach such a threshold that he would accept alternative pain medicine from the prison medical staff. At all relevant times, he had access to pain relief like Elavil, aspirin, acetaminophen, ibuprofen, and naproxen sodium. Plaintiff's allegation that prison medical staff violated his Eighth Amendment rights by not giving him his choice of medicine is merely a disagreement with his treatment providers' medical judgment and does not show deliberate indifference.

In short, Plaintiff's claims fail because, although Plaintiff disagreed with the treatment choices, Plaintiff has not shown that Medical Defendants were deliberately indifferent to a serious medical need. Plaintiff cannot show that Medical Defendants ignored his medical needs.

7

In fact, USP medical staff continually assessed and treated Plaintiff's back pain--seeing him often; offering him pain medication; using diagnostic tools, like x-rays and MRIs; and advising consultation with a specialist. Plaintiff disagreed with some of Medical Defendants' judgments (i.e., medicine choices) and chose against others (i.e., seeing a specialist). Again, a mere difference of opinion regarding treatment between a prisoner and prison medical staff may not support a deliberate indifference claim. *See Mosley v. Snider*, 10 F. App'x 663, 664-65 (unpublished) (10th Cir. March 22, 2001) (concluding disagreement with prescribed treatment did not give rise to Eighth Amendment claim where physician determined medication no longer needed and inmate refused to accept alternative medication); *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006) ("[T]he subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist . . . . [W]here a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted under our case law."). *Olsen v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993); *LeDoux v. Davies*, 961 F.2d 1536, 1531 (10th Cir. 1992); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980).

As a matter of law, when, as here, a medical provider treats an inmate based on the provider's considered medical judgment--even if the inmate disagrees--the situation does not rise to the level of deliberate indifference. Based on undisputed, material facts, Plaintiff does not show either the objective or subjective prong of an Eighth Amendment violation.

**CONCLUSION**

The Court concludes that Medical Defendants were not deliberately indifferent to serious medical needs. Therefore, Medical Defendants did not violate Plaintiff's constitutional right to be free from cruel and unusual punishment. And, Medical Defendants are thus entitled to qualified immunity as a matter of law. The Court need not move on to determine whether the constitutional right was clearly established.

IT IS ORDERED that Medical Defendants' Motion for Summary Judgment is **GRANTED**. (Doc. No. 45.)

Dated this 22nd day of March, 2018.

BY THE COURT:

_____
HONORABLE ROBERT J. SHELBY
United States District Court Judge